MSWordDoc Word.Document.8 All right, the next case before the court is Barnes v. Merit Systems Protection Board. Mr. Short, do you want to reserve five minutes for rebuttal? That's correct, Judge Maloney. Okay, the case is case number 153018. You may begin. Good morning, Your Honors. May it please the court, I'm Frederick Schwartz on behalf of Mr. Barnes and I think myself as well. I believe that Herring is just positive and that the concerns raised by Judge Rayna in his dissent are not present in this case. But before I discuss Herring, let me, and he's here to tell me I'm wrong. Okay, Mr. Schwartz, actually I've got something else to address. And looking at your brief, for example, on page four, you state that the facts, you state foregoing facts are not specifically relevant, but they're useful to the court. Then you go on and you misspell the name of your client. You misspell Pentagon. There's other topographical errors in that paragraph. And I find your brief replete with this type of lack of attention to correct grammar and respect for the English language. I would highly suggest that you proofread your briefs carefully before submitting them. Because when you have the type of errors that are in the brief and the high number of them, it really distracts from your argument. And I say that to you just so that you know going forward that it would be a really good idea to review your material carefully. Well, I certainly would agree, and I did submit a corrected brief to the court, as you may know, which corrected what I thought were the topographical errors. But if you recall, this was done very quickly, and I apologize to the court for the topographical errors because I pride myself on having as few as conceivable. This is your corrected brief. I'm sorry? This is your corrected brief. Then I apologize to the court. Okay, that's fine. Go for it. I stand chastised in an area where I thought it was okay. In any event, under the Civil Service Reform Act, the Congress determined that the board would be its handmaiden to carry out its statutory and constitutional obligation to provide due process to the employees. And they did it for two reasons. Not only the Constitution, but the expense of having trained an employee. And the time limit on filing a petition with the board is not jurisdictional. It permits the board to, in fact, review and make exceptions at its discretion. So there's no question about the discretion. And that raises a problem for you, doesn't it? In other words, we have to find that it was an abuse of discretion. We can't simply say that if we'd been sitting here in the first instance, we'd find a day or two delay excusable. We have to say that the board abused its discretion in reaching its conclusion. Isn't that right? Well, that's correct. But abuse of discretion is a very broad term. If you look at Wahl and its citation from Alonzo, you'll see that, in fact, you are to use a much broader determination in terms of abuse of discretion. Also, if you look at your Century case, which is not a board case, which we sat in our brief at 554, 5th, 3rd, 1029, I hope without typographical error, a party may establish an abuse of discretion by showing that the court made a clear error of judgment in weighing the relevant factors or exercising its discretion based on an error of law or clearly erroneous fact-finding. It seems to me that abuse of discretion is a term which is broad enough to encompass the determination made by the board. For example, they determined that it was three days late without addressing the issue of whether two of those three days were due to the board's email system, which was down, for example. In fact, it was one day and not three days. And there are other issues. Even if we accept the proposition that it's one day, because I think you've got a pretty good argument on that since the ECF was down, though arguably you could have faxed it in or done something else to get it there. But even if we accept it as one day, the board did acknowledge that it was a short timeframe, but they weighed other factors that they thought outweighed the short timeframe. Well, they did. But, for example, they said that I should have been familiar with the rule based on my past practice. I, in fact, was familiar with the requirement, the regulatory requirement, but I was not familiar with the fact that the word count has nothing to do with the page count. And that is a critical element in the way that a lawyer works. How many pages is 7,500 words? I did it in 26 pages, I believe. That's not that far off of 30, is it? Well, the problem is this, Your Honor. When I do a Douglas case, I list the criteria, single-spaced, and I list what the agency determination with that criteria, single-spaced, and then I address FIERA. Because I believe that the fact finder or the determining body has to have before it, just as a reminder what the requirement is and what the agency did. That added a lot of length, apparently. So I just took them all out, and then I had to come up with language which encompassed both of those particular problems. The other thing I did is I took out a lot of citations. And I hate string citations probably as much as you do, and I didn't have that many. But as I point out... What word processing program are you using? WordPerfect. WordPerfect. And that doesn't give you a word count? It does give you a word count. But the process of getting a word count is you have to block out that part of the brief, which is subject to a word count, and then you have to paste it on another page, and then you have to get a word count. And it's not a very efficient way of working. Particularly when you're limited because of the non-availability of the record. The efficient way is just to look at the pages. For example, in this court, I can look at the number of pages and determine whether or not I'm close to the word count, or in this case would be the page count. And that was the practice that I followed. It seems to me that my obligation is to create a brief without typographical errors, and I hope that was only the first page that they were put up. In any event, create a brief which is helpful to the court, because for the efficiency of the court, the best tool for doing that are the briefs of the parties, and the way the briefs structure the arguments, and the cases which are cited in support of either argument. And Mr. Carney's brief was an excellent brief, and my brief, I think, was a good brief in that regard. And that is why what you try to do is you try to come up with the best brief, and within the time constraints. And so rather than pause at the end of every page and determine how many words I had and then how many words I had left, I always use, except now before the board, I always use the page count. And that is a perfectly reasonable tool to use. And then if it turns out I'm wrong, and as Mr. Carney pointed out, I suppose I could have submitted a brief or a petition which had more words than necessary, and then the board, as Mr. Carney pointed out, the clerk would send it back to me and then I'd correct it then. And that would be apparently appropriate in terms of board procedure. But what I think is my responsibility is to submit a responsive brief. Why don't you just file a motion on Friday saying motion for extension of time for two days in order to remove words from the brief or from the petition? I mean, you know, we've all practiced law. What you do is you watch for your deadline, and if you think you're not going to make it, you see if you can't get an extension. Well, because I guess there are two answers to that question because I've asked myself that a number of times. The answer to that is that I believe that I could, in fact, comply. And the second answer to that is I believe that that court would do what this court would do, that because of the shortness of time, and it was a very short time when I finally got it completed, that it would be considered de minimis. And therefore, the most efficient way of doing it for the court would be to submit a proper brief or proper petition a little bit late. And that is apparently not what the board does, even though the board is supposed to consider those criteria in Alonzo and say if there's a reasonable reason for failing to do it promptly, then you look at the time, and you look at the other factors, and you determine the most efficient way. Or rather, you determine whether there is good cause. But I knew that if there was good cause that, in fact, that would be the best way of doing it, and I believed there was good cause. But I agree with you, Judge O'Malley. In those circumstances, again, that is what I do. I just stop and submit a motion, although the motion would be denied. Because, well, first of all, the motion, if I wanted more words, would be denied. The motion to extend the time, I should have done that. But that, at least in my view, was not as efficient a way of doing it as presenting, because of the dilemma I found myself in, a full brief to the board when they opened up their doors on Monday morning using the e-filing system, which I was required to adopt, because it's much more efficient, and allow service on the agency, too. So it is, in my view, a very small error that results in good cause. And that is, in fact, what Herring said. You look at the duration of time, and the duration of time was really quite small. You look at, and Herring also came, it's a decision that came after the board made its decision. You look at the duration. You look at whether it was dilatory, whether I was trying to stall. And, in fact, by hand-delivering it when their system didn't work on Monday, too, I did everything I could to be non-dilatory. It's not repeated neglect. Everything else had been filed on time. Do you want to save the rest of your time for rebuttal? You're into it. Okay, we'll give you what you have left. May it please the Court. I'd like to discuss Herring for just a moment, which I did address in my brief. Would you have made a different decision after Herring? I don't believe Herring would have required the board to do anything different. There was no evidence of any monitoring by the petitioner in this case. And then there were also other factors, failure to follow the board's regulations, that support the board's decision. Okay, was there something else you wanted to say about Herring? No, Your Honor. This is pretty harsh, don't you think? I mean, you call it three days, but your system was down. If lawyers at our court try to file an ECF and the system's down, we generally give them that as if it's a weekend. Well, Your Honor, the board did consider that its e-appeal system was down. It noted those facts and considered them as part of the totality of the circumstances. They still called it three days instead of one. Yes. Well, as I noted in my brief, there were other options. The petitioner did not attempt to use e-appeal until after his brief was already due. So there's really almost kind of two phases of the untimeliness. There's the Friday failure to file because the brief at the 11th hour was discovered to be too long. And then on Saturday, once the brief was put together in the proper format, there were two attempts to e-file, and then that was that. You know, faxing it would have taken a few moments, delivering it to a commercial delivery service. Then it would have still been a day late. It would have been. But it would have given the petitioner the opportunity to cut that off at one day. It was within his control to do that. So would the results have been different? Well, one day is less than three, and the length of the delay is certainly one of the factors that the board has to consider. But you're requiring electronic filing, and that system is supposed to facilitate filing. It's supposed to improve the processes, and yet your system is down, and you still count those as days. Shouldn't you subtract those two days and use it back to one? Your Honor, I think if the petitioner had no other option but to use e-appeal, he's not required to use e-appeal. He can fax, hand deliver, mail, e-mail. I'm sorry, I don't know if he can e-mail. But he has those other three options, and I think the board said you're late. And due diligence is not just trying that, but not just trying e-appeal. He shows up Monday morning and personally goes down there and files a brief in order to make sure that I think your system was still down on Monday, right? Yes, it was, Your Honor. So he goes down and files this by hand. I mean, I see signs of diligence here. Well, certainly there were signs of diligence. The attempts to e-file were signs of diligence. But I think the board looked at it and said, well, but he stopped. He was already late. And he had these other options within a few minutes that brief could have been faxed to the board or could have been delivered to a delivery service to preserve that Saturday filing date. And that the petitioner did not. Did the weekend count? Yes. Yes, Your Honor. Your original question was would it have mattered? And Bridget said, you know, one day is clearly less than three days. But there's still no good cause for the failure to file on Friday in the board's view. So that even if it's one day, you still have to have good cause. And there is no good cause for the failure to file. But isn't excusable neglect good cause? Well, it's excusable neglect if it's neglect that a reasonable person would fall victim to. Well, I mean, he says you say 30 pages or 7,500 words, whichever is less. But his point, he thought that 30 pages and 7,500 words would likely correspond or at least close to correspond. I mean, it is a pretty big gap if you're talking about a five-page differential. Why even have 30 pages? Why not say 25 pages then? Well, Your Honor, I think the board has to accommodate more than just attorneys who type their briefs. We receive a large number of handwritten briefs. So 30 pages would allow someone to do a handwritten brief that might only be a thousand words. So, I'm sorry, two or three thousand words. We're less than the allowable limit. So, you know, and the words, whichever is less, signal don't just do one. Make sure that both comply. And that was included in the initial decision. It's included in the board's regulations. You know, I think counsel made an unfortunate assumption that if he was under 30, he'd be fine. Well, it's not what the ID said and that's not what the board's regulations said. But do you agree that had he submitted this brief on Friday with too many words, that it would have just been a matter of course that they would have sent it back and say resubmit and he would have been fine? That is the purpose of the board's regulation that was put in in 2012. The clerk has the option to reject a noncompliant brief. So if it had looked at the brief and did a word count and said this is way too long. Right, but then they would have let him resubmit. They could have rejected it and said you have two days to resubmit. Right, so he would have had the time to fix his word count. If he had filed on Friday, Your Honor, yes. So don't you think this is all a lot of spinning for no really good reason? You admit that if he had done the noncompliant brief on Friday, he would have had until Monday to do a compliant brief. And you get a compliant brief on Monday. Why isn't that good enough? Well, Your Honor, I think if the board has regulations and counsel and parties are required to be familiar with them. And if counsel had read the regulations, perhaps he would have taken the steps that you outlined earlier. But he did read the regulations and that's where he saw he had a dilemma. And in addition to the circumstances that Doug O'Malley was pointing out, there's the other circumstance that your electronic system is down, does not allow for electronic filing. And you say that had he filed on Saturday, it could have made a difference. It would have only been one day instead of three. That is correct. The length of time is a factor and one is shorter than three. But I go back to my original point. There's still no good cause for his failure to file on Friday. That made his brief untimely. Absent good cause. But the board does allow excusable neglect by counsel to serve as good cause in other cases. So in other words, some lawyers who mess up get a break and some lawyers who mess up don't. Right? Well, Your Honor, when there are other factors present, for instance, in Roe and in Herring, where there was evidence that a petitioner had monitored the progress of the case and that the attorney's negligence was essentially an understatement beyond the petitioner. Had Mr. Barnes monitored? Are you saying that had Mr. Barnes known about all this and monitored what happened on Friday night, that we'd have a different case? Well, I'm not sure that monitoring, proclaiming the duty to monitor requires that petitioner be looking over the attorney's shoulder on Friday afternoon and evening. But that didn't happen in Herring either. There was evidence a week before the due date that Herring called the attorney. There's also evidence that Herring had some impairments that limited his ability or her ability to monitor. But there was evidence of monitoring. Here, there's none. But we are charging Mr. Barnes with essentially a one-day mistake made by his counsel. Your Honor, I respectfully disagree. I think there was a three-day delay, as the Board correctly thinks. Well, one day either way. I mean, if he had done it on Friday noncompliant, he would have been fine. Right? And then you make the counsel actually sign up for ECF and you're telling him he shouldn't have used ECF. He should have, even though you were down. Well, there was evidence in the record. He was informed that the e-appeal system was not functioning. So then he had a choice to stop and try again on Monday, which is what he did, or go to the fax machine, go to Kinko's, and fax it to the Board to preserve that one day late. Thank you. This Court has no additional questions. Thank you.  Hearing quotes from Anderson, the Department of Justice, and Alonzo particularly, which says, the appellate need not show an utter impossibility, but only that the delay was excusable in light of the particular facts and intending circumstances. I would agree that there were alternative means that I could have used. But in fact, the means that I used was the one that was most efficient in terms of the Board. If I had perhaps, perhaps I could have faxed it to the Board. But I certainly, if I mailed it, it would have to be, it would arrive later. The most efficient way of dealing with the Board is to use the e-filing system, which I attempted to use. And even if it had only worked on Monday, my assumption was even if it was down for the weekend, and I tried it all weekend long, certainly when people got in on Monday, then they'd fix it. And that is the Board's chosen means because you serve the other party, and you also serve, or you end the need to scan. So that's the most efficient means. And when that didn't work, clearly the most efficient means was to walk down, or take the subway down there, and file it by hand. And that's exactly what I did. So those were all the most reasonable choices, if you consider the purpose is to get it in the Board system as rapidly as possible. And I was aware of the rule. The issue isn't whether or not I was aware of the rule, or kept abreast of the regulation. The issue is this. The issue is whether I had some reason to believe that somehow the page count had a relationship to the number of words. And I did see it said, whichever is less, which meant that I had to go through a process in order to make that determination, which is exactly what I did. But I did not contemplate that the word count would be significantly over the permissible page count. Thank you very much, Your Honors. All right, the case will be submitted.